not to exceed 15 minutes per side. Mr. Bostick, you may proceed for the advonite. Thank you. Good morning, Your Honors. May it please the Court, I would like to reserve four minutes for rebuttal. Starting with my issue one in the brief, which deals with count one, which is the unlawful entry into the 909 East Saginaw address. It is the plaintiff's position that there was a factual dispute concerning consent that precluded summary judgment in favor of either party. Does that go to the issue of duress? Later. No, okay, you said there's issue of consent. Is the issue of consent limited to the issue of duress? No. Okay, what else do we have other than duress? There was a denial by Mr. Hill that he consented, and a claim by Mr. Whitford. Well, no, Hill said he did consent, but he only did so after Whiteford said, if you don't let me in, I'll contact the police. And then he said, okay, you can go in. I mean, is there a dispute that he said that? I thought there was factually, that it was factually documented that Mr. Hill told him he did not consent. Well, what did he say to say he did not consent? I had a quote here that he... I think there were two issues. The first issue is a complete factual dispute. Your Honor, I may be recalling it incorrectly. You may be recalling it correctly, but it would have been... Okay, you don't know the record then? I mean, what does your client say he said to Whiteford? That he did not want him to go in there that morning. What, no, not conclusions. What words did he say? He didn't want him to go into the basement. I said, okay, his words were, I don't want you to go in. Is that what exactly he said? I can't stand here and give a quote. I'm sorry. I just... Okay, was his deposition taken? It was. You don't know what he said in his deposition? Your Honor... I think you ought to, okay, maybe in rebuttal you ought to review his deposition. One reason we have our argument is so that prepared attorneys can help us out. It's not helpful if the attorneys aren't prepared. Thank you for that guidance. Well, you ought to know what your client said in his deposition. So I can move on to the dispute over the coercion. Okay. This Court's decision in McCaleb from 1977, United States v. McCaleb, talks about how coercion eviscerates consent. And there is talk in the briefing about how the situation developed. And Mr. Whitford went upstairs at some point, and that is when Mr. Hill had the power company come over with the key. So the conversation about the threat to call the police had already occurred. And that's why I dispute the defense claiming that the gestures, the physical activity of getting the key, is equivalent to a homeowner meeting someone at the door and then stepping back and allowing them in. The threat to call the police had already occurred. Does that create coercion or duress that you either let me in or I'll call the police? Is that your position? I think it taints it enough that it creates a jury question. Okay. Isn't duress a legal issue rather than a factual issue? Not in a 1983 action when you have any authority that's not. My understanding is duress is a legal determination. That's made by the judge. Well, there are a lot of legal determinations in a 1983 action that are normally decided, but if there's a factual dispute on a fact that leads to the legal conclusion, it becomes a jury issue. For purposes of their motion for summary judgment, we review all inferences in favor of the non-moving party. So I look at what your client says he said and accept that and give it the reasonable inferences, and basically he says I was coerced or my consent was under duress because they threatened to go to the police. The trial judge found that that was not duress. I think that's a correct legal ruling. I think that's the end of that case. On the first one, that's 909E Saginaw. I know you've got another claim as to the 923 Saginaw, which I think is a closer case. But you can argue. I mean, you've got your time. You can argue whatever you want. Well, the only other point then as to 909 is whether or not there was an exigency. I think we've dealt with the facts of that. The defense claims there was sewage. The report was sewage in the basement. However, Mr. Whitford talked about the report was an odor of sewage. And the things that I believe the district court relied on to find an exigency were all discovered after the entry. Well, they were scheduled to meet the next day anyway. The encounter that is involved here was accidental, wasn't it, Matt? It was, Your Honor. I think that the fact that Mr. Whitford agreed to wait to the next day weighs against the finding of exigency. He went over there to deal with other issues with an outstanding correction notice and a rental certificate, not the sewage. But as it played out, that's what he ended up doing. The sewage was actually the more serious issue. Well, it turned out to be the more serious. But my focus is on what he knew when he arrived, and that report was the odor of sewage. And when you put that into the circumstance of the sewer reconstruction work that was going on in the whole area at the time, odor of sewage in the air probably wasn't that unusual while that work was going on. And I just think that blends into either probable cause or the exigency in this particular location. In terms of 923 East Saginaw, I read the defense brief and they talked about perhaps there was someone else at the location and Mr. Whitford didn't know who the tenant was. And I reviewed the briefing and the citations to Mr. Whitford's testimony, and it didn't appear that he ever claimed someone else gave him consent. He identified Mr. Haji as the tenant who gave consent, at least to the extent where inferences from the record can. Can you enlighten me about this? You submitted an affidavit purportedly for Mr. Haji, and we would assume it is. But here you're claiming that your client's constitutional rights were violated. And so I don't see how the fact that Mr. Haji may or may not have given consent, how that impinges on your client's constitutional rights. A landlord retains some privacy interest in a rented facility. Obviously, I can't speak to the lease in this particular case, but typically leases will reserve a right for the landlords to enter for emergencies. Well, that's true, that's true. But I'm not sure that Mr. Haji's denial of permission, if we take his affidavit at face value, creates a denial on the part of your client. How do we make that leap? He's not your client's agent. I mean, wouldn't the right that was violated be the tenant's rather than the landlord's in that context? But the landlord retains some privacy interest in the property. But the question we're looking at is not whether the landlord denied permission. What we're looking at is a situation where the tenant says he denied permission, and the injury there would be to the tenant, wouldn't it? Right. Mr. Whitford didn't claim that Mr. or Mrs. Hill gave consent. I know. He explains another set of facts that are kind of beside the point as far as Mr. Haji's affidavit is concerned, correct? Yes. Okay. But the short answer is no. On that, it sort of turns on the interpretation of the affidavit. The district court said that there's no statement affirmatively that he refused injury. He says that the inspector came to inspect without his permission. Well, that's an ambiguous statement in itself. The inspector doesn't need his permission to come to inspect. He might need his permission to enter, but it's not a very strong affidavit, I would think. It seems to me it's not entitled to much weight. It's not an affidavit that I would have ideally drafted if I would have been involved at the time Mr. Hill acquired it. It's the one we have to deal with. It is, but the plaintiff's point is that it's as weak as it is, it's enough to create an issue for the jury. That's where I think the district court failed was the interpretation should be left to the jury. Well, the exact words of the affidavit are, the city of building inspector came in to inspect my house without my permission. It says came in. Judge Neff said it didn't categorically deny permission, but on a motion for summary judgment, we give all the reasonable inferences to the non-moving party, which is you. And the question is whether the reasonable inferences from this can establish that the inspector came in to inspect my house without my permission creates an issue of fact of whether there was consent or not. Thank you, Your Honor. I'll finish up and rebuttal. Okay. All right, Ms. Masseron. Good morning, Your Honors. May it please the court, Mary Masseron on behalf of the city of Lansing and code inspector Whitford. The district court properly granted summary judgment in this case after multiple hearings in favor of Whitford because he did not violate the landlord's Fourth Amendment rights in entering either the 909 or the 923 Saginaw, both because of consent, because of exigent circumstances, and in any event, he would be entitled to qualified immunity if the court needs to reach that. There hasn't been any discussion of the due process claims, and so I won't spend a lot of time on those. I think I would be happy to entertain questions if the court has questions on those. I think they're properly dismissed. The pre-deprivation notice claim cannot stand in the wake of the Gardner opinion, which I think quite clearly said the notice was sufficient for the property owners and had questions about it with respect to tenants, which we don't have here, and post-deprivation language regarding the appeal was sufficient. In addition, Hill testified he had been cited under various code proceedings with his multiple problematic properties on other occasions, and he was familiar with the processes, so certainly there can't be any issue about his not understanding his legal rights in the wake of a citation for serious health and safety violations. In terms of the 909, 913 East Saginaw property, a couple of things. I think it's important to run through the facts. Hill had a conversation with Whitford. He said, yes, he understood. He set up a time for the inspection. He said, today's not really good, or tomorrow isn't really good. I'm going to be out of town. Let's schedule for the day after. The code inspector went out to the property, though, because there were other problems, including failure to pay on occupancy certificates and the question about inhabitants in a unit that had already been re-tagged. And when he arrived at the property, despite Hills having told him he'd be out of town, Hill was there, and at that time he discovered that there were illegal tenants in the unit that had been red-tagged. There's no question about his access there. He used a common stairway, common doorway, open to the public. And he then discussed this with Hill, and in the process also said he wanted to look at the basement. Hill sent for the key and unlocked the basement door. So to my way of thinking, the district court was absolutely correct in concluding that under that totality of circumstances, with Hill having consented generally to the inspection, Hill being at the property when Whitford arrived, Hill sending for the key regardless of whether Whitford said, you know, if you don't call, I'm going to call the police. He was not under duress or coerced, and I think the cases that we've cited in the brief support that outcome. Is that a legal determination as opposed to a factual determination, duress and coercion? It absolutely is. I think it's important in mixed fact law questions to differentiate, and if there is a question about the factual predicate, which there is not here, then that might be arguably a jury question. But in this case, there isn't a question about the factual. Mr. Bostic doesn't know his client's own deposition testimony. My notes say that Mr. Hill's testimony is that Whitford told him that, quote, he needed to get into the basement, otherwise he would call the police. Is that an accurate quote from his deposition? It's record 90-2, ID 793. Okay, so at least we know what the record says. Correct. Okay. It's not any different than police go and say, can I enter your premises? And the guy says no, and the police say, well, okay, I'll go get a search warrant from the judge. And the defendant says, okay, come on in, otherwise you don't have to go get a search warrant. Well, I mean, we have those all the time, and that's not coercion or duress, that you're going to go actually get a search warrant establishing your probable cause to go in there. So I think you're fine, at least I'm just one judge here, but I think you're fine on the 909 Fourth Amendment claim. But I'm troubled by the 923 entry in view of the affidavit and the reasonable inferences we have to give to the non-moving party for your motion for summary judgment. And tell me how the statement in the affidavit, the city of building inspector came in to inspect my house without my permission, how that does not create an issue of fact of whether or not there was consent. First of all, this is a number of tenants who are in this building, and what we have here is two sentences Judge Guy's comment made. It's ambiguously worded. Okay, but ambiguities have to be construed in favor of the non-moving party, do they not? So let us assume. Is that right? I agree with that as a proposition of lie, I absolutely do, but I don't believe that this affidavit is sufficient to counter the affirmative testimony. We don't weigh evidence, do we, on summary judgment? I mean, you want us to say that Whiteford's testimony is stronger, more credible than the tenants, but we don't do that on summary judgment, I don't think. Your Honor, I understand. Whiteford's testimony goes to other matters other than the permission to enter the Haggie apartment, right? His testimony, yes, is a general testimony. A gentleman was there on the street. Haggie's permission wouldn't have anything to do with his entering the basement and finding that the building had no heat. I mean, he may have known or thought the building had no heat at all from entering Haggie's apartment, but Haggie didn't have anything to do with other parts of Whiteford's activities, right? That's absolutely correct, and that's why I'm trying maybe not very articulately to say that even taking that affidavit, which I think is highly ambiguous and not entitled to much weight, but even taking it with any inferences, Whiteford still had a basis for entering because he's been flagged down in the street by a gentleman saying, I don't have any heat in this building. That entitles him to look, and when he looks— But this gentleman, Haggie or whatever his name is, says, I live there. I'm the tenant, and I don't know who the other person is that Whiteford talked about, but Haggie says, I'm the tenant there, and he entered my house. I didn't give him permission, so isn't there a factual issue whether this guy is the tenant or the other guy is the tenant? I mean, there's a dispute there, isn't there? I don't believe so. The record shows there were at least two tenants in the building. It's very unclear to me. Okay, if it's unclear, don't we have a jury issue? Don't we have a factual issue? I mean, that's what the whole—why we have trials when things are unclear. We have very clear testimony from Whiteford at the summary judgment stage. I'm going to try to walk through this. That says, I finished at 909, 913. A gentleman flagged me down and said my unit doesn't have any heat with respect to 923. The plaintiff comes in to try to create a fact question with an affidavit that is highly ambiguous and that does not refute the testimony by Whiteford. He doesn't say, I didn't flag him down, I flagged him down. He says, I didn't call for an inspection. I could pull the wording up. That's the second sentence. I did not call them any time to come in for inspection. But that follows the first statement, that the city inspector came in to inspect my house without my permission. Came in. And it doesn't say where the inn is or anything else. But it seems to me if you were going to refute Whiteford's very clear testimony, you would have to show that this affidavit is relating to the same person and that he's saying, no, that's not what I did. He doesn't say that. He doesn't say I never went in the street. He doesn't say I had heat. He doesn't say anything about heat. So what you're left with is very clear testimony from Whiteford, a gentleman flagged me down, and he goes in to the basement to discover an inoperable furnace, which he calls appropriate personnel to see what the status is. It seems to me in that circumstance there isn't a fact question. I also agree, although I don't think I've emphasized this as much as I might have, that the privacy interest here is the tenant's interest. The tenants are not a party to this. The party to this is the landlord who had this building without him. Does the building inspector have authority to enter the landlord's premises without consent from somebody, either the tenant or the landlord? I think what this court said in Gardner is you have to either have a warrant or you have to have consent or you have to have exigent circumstances. So the landlord does have an interest. The tenant has an interest too, a privacy interest in the premises, but the landlord does as well. So if the building inspector enters the premises, he violates probably both the rights of the tenant and the landlord. The landlord can't enforce the tenant's rights, I agree, but the landlord has his own rights, does he not? So with respect to entry into the tenant's unit, I'm not sure that's really a privacy interest of the landlord. With respect to entry into the basement, if that's not a common area open to the public, that would be the landlord's. The landlord owns the building. I thought you agreed with me the landlord has an interest in the building he owns and the tenant does as well. But you say that once he's leased the premises, the landlord has no interest at all in the premises and his rights cannot be violated because he has leased it? I don't think the landlord retains a privacy interest in the private apartment within a building. With that regard to this dispute about the apartment, wouldn't Mr. Whitford's basis for entering the basement and determining that the building was without heat, wouldn't that have to be based on exigent circumstances? I think it also could be based on exigent circumstances. Wouldn't it have to be because he didn't have a warrant? Well, he didn't have a warrant. And if he didn't have permission to go to the basement, even if he had permission to go into the apartment, right? Oh, I see the distinction you're making. That makes sense to me. Right. And so he's got to have exigent. I don't know why I didn't say the word right now, but exigent. Thank you. At the end of the day, to do what he did with respect to that building, he's got to have had exigent circumstances, right? I agree with that. And I think the record is very clear that he had exigent circumstances. What about the question I ask about it not really mattering whether he entered with or without the permission of the tenant? Because it's Mr. Hill who's here claiming that his rights have been violated. Isn't it better just to sort of sidestep the whole question of whether or not the tenant gave consent and just look at the whole question of 923 as whether he had a basis to enter the basement? I think that's probably the most direct and clearest challenge. I guess the only problem, it seems, with what I just said, is if he wouldn't have had the information that he needed to go in the basement without entering the apartment. Right. But he did have the information, and there's been nothing in the record to refute that someone flagged him down and told him that, and certainly his own visit to the basement and the mechanical inspector's testing revealed that there was no heat. And while in the briefing, Brother Counsel tried to argue, well, you know, the fact that there are space heaters and all these other things, that makes it not serious. It actually makes it more serious because of the huge potential fire problems that that kind of heating would have created. So it seems to me, I see my time is up. I just realized you're out of time. I think you've covered it. What are the exigent circumstances you claim allowed him to enter the basement? The fact that he was told that the building lacked heat. Okay. I mean, is that an emergency that has to be corrected immediately? I mean, it is? I would argue it is, absolutely. And if you look at the language. He doesn't have time to go get a warrant? I mean, usually extension, I'm doing the same word now. Exigent circumstances. I think if you say it too many times, it becomes hard to understand. I mean, we usually look at those circumstances as, well, the police had to act promptly because they really didn't have time to go to court and to get a search warrant, and therefore there is an exception to the search warrant there. The fact that the building does not have heat, I don't see a dire emergency or something that would keep them from going to the court and getting a search warrant. I mean, is there something there? I think there is. And I think Camara and the Gardner case both make this very clear. Camara says very clearly, okay, we're going to change the law. We understand this is a different area than the criminal context. We understand the need for administrative searches in a different kind of way. But when you have an area that you're going to inspect, you need to get a warrant. But they very specifically say, unless you have a call, a complaint, some reason why you need to check it out, in which case you're entitled to do that. They leave that specifically open, and the language is right in the opinion. And I think that the Gardner case really drives that point home. What Gardner said was, look, A, many of these conditions that you claim are exigent were likely created by the aggressiveness, arguably aggressiveness, alleged aggressiveness of the law enforcement search that preceded the inspectors arriving on the scene. So in Gardner, they were looking at disconnected fire alarms, and they were looking, the law enforcement people had gone in and dumped out flour and that kind of thing that you do when you're searching for drugs. So the court found that to be a fact question because, A, the conditions were not severe, serious, potentially threatening to health. And, B, the question in some of the instances was whether those conditions had actually been caused by the police search and not had been existing over time. This case, using the reasoning from the Gardner opinion, it seems to me, falls squarely within the notion that when you have a serious health and safety issue, you're entitled to go in. That's an exigent circumstance. And the lack of heat or a basement filled with inches of water and raw sewage, a code inspector in that circumstance does not have to wait and set up a pre-deprivation hearing or whatever. The code inspector is entitled to go in and deal with the situation. We know from just general reading of the newspapers that Are you still answering Judge Griffin's question? I forgot what the question was. I think we are done with your argument. Thank you very much. Mr. Bostic. Thank you, Your Honor. Judge Griffin. Thank you, Your Honor. And Mr. Well, I've lost it, and I'm losing my time. There was one more site, and it was a few pages after the page 783 that you mentioned, but I think it's safe to say that if my client at his deposition would have said, I told him no, I would have put that in my brief. So I think it's safe to say that in my client's deposition, he never testified that he specifically denied consent. I think that's a pretty safe conclusion. When you say your client, your client is still, right? Yes. Did I misspeak? No, you didn't. But the repairs that were made, they weren't declared unnecessary. In effect, they were in the landlord's interest for the long run. No. There's a huge factual problem with the things that Mr. Whitford ordered. That's a whole other topic that we never even litigated. So it's not part of the record? No. Okay. All right. Well, I think my client might have testified about some of the trivial things and how other inspectors told him different things, but it's not an issue that's been litigated. Regarding 923, there's no exigency whatsoever. He didn't learn that the furnace was inoperable until he got in, first of all. But second of all, space heaters were working and all the utilities were on, so there just was no exigency. Well, he did see that there were heavy blankets covering the windows, right? That's kind of an indication of lack of heat, I think. And he indicates that someone flagged him down and apprised him that there was no heat. And that's not contradicted in any way by the tenant's affidavit because we don't know who the other individual was, so we just don't know. So he did have some arguable knowledge that the building was without heat. Agreed. Is that enough for him to enter? Is that exigent circumstances that the landlord knows there's not heat? No. Why is there no heat? Is the breaker off? Does it take three seconds to reset the breaker? He doesn't know why. He doesn't know how long. He doesn't know enough to declare that as something that has to be, you know, there's an imminent risk to health or safety or life. That's the standard. That's the standard. Okay. That's not even close. All right. I'll wrap up and talk about the 14th Amendment claims. I wish I would have known. Well, you're on rebuttal. I don't think you're rebutting anything the appellee has said. I mean, it's up to the . . . You've got six seconds. . . . presiding judge, but we usually limit rebuttal to a rebutting that the other side has brought up. Thank you. All right. We appreciate the arguments that both of you have made, and we'll consider the case carefully. I believe there's no other argued case. The court may adjourn.